IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 4 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MIGUEL SUPINIO CARRILLO, | § | |
| also known as Juan Carrillo, | § | |
| also known as Pedro Cujay-Elias, | § | |
| Petitioner-Defendant, | § | |
| | § | |
| | § | |
| vs. | § | Civil Action No. B-04-056 |
| | § | Crim. No. B-02-542 |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff. | § | |

**GOVERNMENT'S ANSWER TO SECTION 2255 MOTION,
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT, AND BRIEF**

The United States of America ("United States" or "Government"), by and

through the United States Attorney for the Southern District of Texas, hereby files

this Answer to Motion to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody, and Brief. Miguel Supinio Carrillo ("Carrillo" or "Petitioner")

alleges that his guilty plea was involuntary and his trial counsel rendered ineffective

assistance because he failed to move to dismiss the indictment and failed to request

the INS video recorder. Petitioner did not raise these issues in his direct appeal.

Petitioner's claim regarding the voluntariness of his plea could have been raised on

direct appeal, but was not. Petitioner neither alleges nor demonstrates any excuse for

this failure, and thus he has procedurally defaulted. His remaining claims of

ineffective assistance of counsel are without merit.  Thus, this court should dismiss Petitioner's action with prejudice.  Alternatively, Petitioner's claims are unworthy of relief under 28 U.S.C. § 2255, so this court should grant summary judgment in favor of the United States.

1.    **Jurisdiction**.  This court has jurisdiction under 28 U.S.C. § 2255.

2.    **Procedural history**.  On September 24, 2002, Carrillo was charged in a one-count indictment in the United States District Court for the Southern District of Texas, Brownsville Division, Criminal Case No. B-02-542, with being illegally present in the United States after having been deported following an aggravated felony conviction, in violation of 8 U.S.C. §§ 1326(a) & (b) (Crim. Doc. 1).  On October 24, 2002, Carrillo entered a plea of guilty to the indictment before United States Magistrate Judge Felix Recio, Jr. (Crim. Doc. 8, 23 at p. 41).  On January 21, 2003, the district court adopted the recommendation of the Magistrate Judge and found Carrillo guilty of the charge in the indictment (Crim. Doc. 16).

At the sentencing hearing on January 21, 2003, the district court sentenced Carrillo to 57 months' imprisonment, to be followed by a three-year term of supervised release, no fine, and imposed a $100 special assessment, which was abated on the government's motion (Crim. Doc. 15, 18, 21 at pp. 4-6).  On February 10, 2003, Carrillo filed his notice of appeal (Crim. Doc. 17).

2

Carrillo appealed to the United States Court of Appeals for the Fifth Circuit. That court affirmed his conviction and sentence in an unpublished opinion on October 22, 2003. *United States v. Miguel Supinio Carrillo*, 78 Fed. Appx. 412, 2003 WL 22408335 (5th Cir. Oct. 22, 2003) (No. 03-40287) (unpublished) (Crim. Doc. 25). Carrillo only raised one issue in his direct appeal: whether the "felony" and "aggravated felony" provisions of 8 U.S.C. §§ 1326(b)(1) and (2) are elements of the offense of illegal re-entry, not sentencing enhancements, making those provisions unconstitutional. Carrillo conceded that his argument was foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998), and that he only raised it to preserve it for possible further review by the Supreme Court. 78 Fed. Appx. at *413, 2003 WL 22408335 at **1.

The Fifth Circuit issued its mandate on November 13, 2003 (Doc. 24). Carrillo filed a petition for writ of *certiorari*, which the United States Supreme Court denied on or about March 15, 2003 (Crim. Doc. 25). The instant motion to vacate sentence under 28 U.S.C. § 2255 was timely filed on March 19, 2004 (Civil Doc. 1), which was within the one-year statute of limitations period for filing a § 2255 motion. The United States was ordered to respond (Civil Doc. 3).

3.   **Statement of facts**.

Carrillo was a citizen of Mexico (Crim. Doc. 23 at p. 42; PSR, ¶ 33). On June

2, 1997, he was convicted of the felony offenses of trafficking in cocaine and obstruction of law enforcement officers in the Superior Court of DeKalb County, Georgia in Docket No. 97CR1731. He was sentenced to 10 years' confinement on the cocaine conviction and 12 months confinement on the obstruction conviction, with the sentences to run concurrently. On September 4, 2002, he was paroled and deported to Mexico (Crim. Doc. 23 at p. 42; PSR, ¶ 22).

On September 6, 2002, United States Border Patrol agents encountered Carrillo in the United States near the Fort Brown Municipal Golf Course at Brownsville, Texas. Carrillo admitted he was a citizen and national of Mexico without proper documentation to be in the United States (Crim. Doc. 23 at p. 42; PSR, ¶ 3). Carrillo stated he entered the United States illegally by wading across the Rio Grande River (Crim. Doc. 23 at p. 42; PSR, ¶ 4).

Carrillo did not have permission from the Attorney General to re-enter the United States following his deportation (Crim. Doc. 23 at p. 42; PSR, ¶ 5).

4. **Allegations**. Carrillo raises two main issues which he says entitle him to the relief he seeks, that is (1) his guilty plea was involuntary because he was erroneously convicted of illegal re-entry rather than attempted illegal re-entry; and (2) his counsel rendered ineffective assistance. With respect to the second issue, Carrillo claims that his counsel rendered ineffective assistance for (A) failing to move to dismiss the

4

indictment on the basis that he was improperly charged with illegal re-entry rather than attempted illegal re-entry; and (B) failing to request the INS video recorder which allegedly taped his arrest at the river. Carrillo does not claim to be innocent. He only claims that the facts did not support his conviction for illegal re-entry, but would have supported a conviction for attempted illegal re-entry. None of Carrillo's allegations has any merit. All of his claims should be rejected.

5.    **Transcripts.**  The pleadings are on file with the court. The rearraignment (Crim. Doc. 23) and sentencing hearings (Crim. Doc. 21) have been transcribed as part of the appellate record.  The transcript of the plea hearing is attached hereto as Government Exhibit A, and the transcript of the sentencing record is attached hereto as Government Exhibit B.

6.    **Answer and motion to dismiss.**

### Section 2255 Relief

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), *cert. denied*, 516 U.S. 1165, 116 S.Ct. 1056 (1996).  When constitutional issues are raised for the first time on collateral review, a movant must

establish both "cause" for his procedural default and "actual prejudice" resulting from the error. *Id.* at 934. Absent unusual circumstances, ineffective assistance of counsel, if shown, is sufficient to overcome a procedural default. *Id.* (citing *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995)).

## I.   CARRILLO'S PLEA WAS NOT INVOLUNTARY.

Carrillo claims his guilty was involuntary because he was erroneously convicted of illegal re-entry, rather than attempted re-entry. He contends that INS agents arrested him while he was still standing in the Rio Grande River, so the proper charge would have been "attempted illegal re-entry," rather than "illegal re-entry" as alleged in the indictment. *See* Petitioner's § 2255 motion at p. 5, and his supporting Brief at pp. 8-10. He raises this issue for the first time in his § 2255 motion. He never raised this issue in either the district court or on direct appeal to the Fifth Circuit.

### A. Carrillo has procedurally defaulted.

It is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the petitioner can first demonstrate either (1) cause and prejudice, or (2) that he is actually innocent of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999) (citing *United States v. Sorrells*, 145 F.3d 744, 749

6

(5th Cir. 1998)).  Carrillo has procedurally defaulted on his involuntary plea claim by

failing to raise it on direct appeal. *Galbraith v. United States*, 313 F.3d 1001, 1006-07

(7th Cir. 2002); *see also Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604

(1998).  Carrillo must therefore show both cause and prejudice for the failure to raise

the issue and actual prejudice resulting from the error. *United States v. Shaid*, 937

F.2d 228, 231 (5th Cir. 1991).  A collateral challenge will not be allowed to do service

for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974).

Here, Carrillo does not offer any excuse for his failure to raise this issue at the

sentencing hearing or in a direct appeal.  Thus, he has failed to satisfy the cause and

prejudice requirement, and this court should dismiss the involuntary plea issue.

Further, Carrillo's argument should also be rejected because it has no substantive

merit.

### B. Carrillo's factual contentions are not supported by the record.

For the first time in his § 2255 motion, Carrillo alleges that he attempted to re-

enter the United States on September 6, 2002.[1]  He argues that he never actually

entered the United States because he was still standing in the Rio Grande River at the

time he was apprehended.  He claims that an INS Border Patrol agent pulled him out

---

[1]Carrillo actually pleaded guilty to illegally re-entering the United States on September 6,
2002 (Crim. Doc. 8, 23 at p. 41).

7

of the River as he attempted to turn around and swim back to the Mexican side of the River. *See* Carrillo's supporting Brief at p. 4. Carrillo's allegations are unsworn; he does not attach a sworn affidavit attesting to these allegations under penalties of perjury. There are no facts in the record to support Carrillo's allegations. In fact, the record belies Carrillo's unsworn allegations.

The presentence report states Border Patrol agents "were advised by the Remote Video System's Operator that three (3) individuals were sitting on the Rio Grande River's edge. Upon encountering the subjects, they were asked their immigration status. All [including Carrillo] admitted being citizens and nationals of Mexico without proper immigration documents to be in the United States" (PSR, ¶ 3). Carrillo was arrested and taken to the INS station where he admitted "he entered the United States illegally by wading across the Rio Grande River at a place not designated as a Port on Entry" (PSR, ¶ 4).

Carrillo was clearly found to be unlawfully present on the United States' side of the Rio Grande River at the time of his arrest. He admitted to the probation officer that he had "entered the United States illegally in order to seek employment" (PSR, ¶ 8). He also admitted to the probation officer that he was guilty of unlawfully entering the United States after deportation" (PSR, ¶ 8).

At the rearraignment, Carrillo pleaded guilty to the indictment, which charged

8

that he "knowingly and unlawfully was present in the United States, having been found in Cameron County, Texas" (Crim. Doc. 23, p. 41). Carrillo admitted that he had been found illegally present in the United States:

> [THE PROSECUTOR]: The facts will show that on September 6th, 2002, border police encountered the defendant in Brownsville, Cameron County, Texas. On questioning, the defendant stated he was a citizen and national of Mexico, illegally present in the United States.

(Crim. Doc. 23, p. 42). Carrillo admitted these facts were true (Crim. Doc. 23, pp. 42-43). The record conclusively shows that Carrillo was observed and arrested in Brownsville, Cameron County, Texas while on the United States side of the Rio Grande River. There is not one scintilla of evidence anywhere in the record to support Carrillo's allegation that he never illegally entered the United States. On the contrary, he admitted under oath that had done just that--illegally entered the United States (Crim. Doc. 23, pp. 41-43). Carrillo's unsworn allegation that he had not entered the United States at the time of his arrest is flatly contradicted by the record and should be rejected.

### C. Carrillo's guilty plea was knowing and voluntary.

Carrillo's guilty plea was knowing and voluntary. He does not contend otherwise. At the rearraignment, Carrillo told the magistrate judge that he was fully satisfied with the advice and representation of his counsel (Crim. Doc. 23, p. 15). No

one forced or coerced Carrillo into pleading guilty (Crim. Doc. 23, p. 41). His rights were fully explained to him. Carrillo does not cite to anything in the record which would support his claim that his plea was involuntary. His first point of error should be rejected.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL.

The issue of ineffective assistance of trial counsel are reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984). To succeed on such a claim, the defendant must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2065; *Prate v. Cain*, 142 F.3d 226, 230 (5th Cir. 1998). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance; and, "'[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'." *Id.* (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).

Constitutionally effective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight. The determination of whether counsel has

10

rendered reasonably effective assistance turns in each case on the totality of facts in

the entire record. Thus each case must be judged in the light of the number, nature,

and seriousness of the charges against a defendant, the strength of the case against

him, and the strength and complexity of his possible defenses. *Baldwin v. Maggio*,

704 F.2d 1325, (5th Cir.), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2667 (1984).

Second, he must show that he was prejudiced by counsel's ineffective

assistance. The prejudice prong, however, is more than just an outcome

determinative test. This was rejected by the Supreme Court in *Lockhart v. Fretwell*,

506 U.S. 364, 113 S.Ct. 838 (1993). Prejudice under *Fretwell* requires the petitioner

to show "counsel's errors were so serious as to deprive the defendant of a fair trial,

a trial whose result is unreliable." *Fretwell*, 506 U.S. at 368, 113 S. Ct. at 842

(quoting also *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574 (1986) ("the

essence of an ineffective-assistance claim is that counsel's unprofessional errors so

upset the adversarial balance between defense and prosecution that the trial was

rendered unfair and the verdict rendered suspect")). "Unreliability or unfairness does

not result if the ineffectiveness of counsel does not deprive the defendant of any

substantive or procedural right to which the law entitles him." *Id.* at 371, 113 S.Ct.

at 844; *Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir. 1998); *Goodwin v.*

*Johnson*, 132 F.3d 162, 176 (5th Cir. 1998). Not only must prejudiced be alleged, but

11

it must be affirmatively proven. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). If the defendant fails to establish prejudice, this court need not reach whether counsel's performance was deficient. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

A.    Counsel Failed to Move to Dismiss Indictment.

In his first claim of ineffective assistance of counsel, Carrillo complains that his counsel rendered ineffective assistance because his counsel failed to file a motion to dismiss the indictment. *See* Petitioner's § 2255 motion at p. 5 and supporting Brief at pp. 6-10. Specifically, he argues that the indictment charged him with the wrong offense. He was charged and convicted of illegal re-entry, but he now contends for the first time that he should have been charged and convicted of attempted illegal re-entry. Consequently, he contends his counsel's performance was deficient because his counsel failed to move to dismiss the indictment on the grounds that it charged the wrong offense. Carrillo's claimed point of error is meritless.

As discussed above, there is not one scintilla of evidence anywhere in the record to support Carrillo's claim that he never entered the United States. On the contrary, he admitted at the rearraignment that he had illegally re-entered the United States (Crim. Doc. 23, p. 41-43). He made the same admission to the probation officer (PSR, ¶¶ 4, 8). The biggest problem with Carrillo's claim is that it is

12

factually rebutted by the record.  Carrillo's counsel had no obligation to file a frivolous motion to dismiss the indictment based on nonexistent, hypothetical facts.

Carrillo's trial counsel Assistant Federal Public Defender (AFPD) Paul G. Hajjar has furnished a Declaration (attached hereto as Government Exhibit C).  In his Declaration, AFPD Hajjar points out that a motion to dismiss the indictment would not have benefitted Carrillo.  Even if the facts supported Carrillo's claim that he had not entered the United States, AFPD Hajjar correctly notes that "the government would have moved to dismiss and supercede the indictment which would have lead to the same result" (Gov. Exh. C).  AFPD Hajjar is correct that even if the district were to have dismissed the illegal re-entry indictment, the government could have easily superseded the indictment to charge attempted illegal re-entry.  A motion to dismiss would have been a pyrrhic victory for Carrillo.  AFPD Hajjar wisely chose not to file a motion to dismiss the indictment because such a motion was neither supported by the law or the facts and would not have resulted in Carrillo obtaining his freedom–the  government would have just superseded to charge attempted illegal re-entry under exactly the same statute (8 U.S.C. § 1326).

In support of his claim, Carrillo cites cases from the Fifth Circuit and the Ninth Circuit. *See United States v. Angeles-Mascote*, 206 F.3d 529 (5th Cir. 2000); *United States v. Pacheco-Medina*, 212 F.3d 1162 (9th Cir. 2000).  These cases are

distinguishable and completely irrelevant.  In *Angeles-Mascote*, the Fifth Circuit held that an alien who was stopped at the port of entry had not yet illegally entered the United States. 206 F.3d at 531-32.  The stipulated facts showed that the alien voluntarily approached the immigration officer at the Dallas Fort Worth International Airport. *Id*. at 531.  Therefore, the Fifth Circuit held the alien was not discovered in or found in the United States and the indictment should have charged the alien with attempted illegal entry rather than illegal entry. *Id*.  Here, the uncontested, stipulated facts proved that Carrillo was observed and arrested in Brownsville, Cameron County, Texas while on the United States side of the Rio Grande River (Crim. Doc. 23, p. 42).  *Angeles-Mascote* does not apply here.

In *Pacheco-Medina*, the Ninth Circuit held that an alien who was captured within a few yards of the border after climbing an international boundary fence, did not actually manage to enter the United States. *Pacheco-Medina*, 212 F.3d at 1166.  The alien was spotted by an immigration officer as soon as he dropped off the fence and was apprehended after a brief chase. *Id*. at 1163.  The alien was never free from official restraint. *Id*. at 1166.  The litmus test for the Ninth Circuit is whether the alien has made "entry" into the United States. *Id*.  If so, then the alien can be convicted of being "found in" the United States–illegal  re-entry is the appropriate charge. *Id*.  If not, then the alien cannot be convicted of being "found in" the United

14

States–attempted illegal re-entry is the appropriate charge. *Id.* Here, Carrillo admitted that he had made entry into the United States (Crim. Doc. 23, p. 42-43; PSR, ¶¶4, 8), and thus, he was properly charged with illegal re-entry. *Pacheco-Medina* supports Carrillo's guilty plea to illegal re-entry.

Carrillo has not even alleged prejudice. Carrillo cannot show that the result of his case would have been different if the illegal re-entry indictment had been superseded by an indictment charging attempted illegal re-entry. He would have been convicted under exactly the same statute. His Sentencing Guidelines' range of 57 to 71 months' imprisonment and 57-month sentence would have been exactly the same regardless of whether he pleaded guilty to illegal re-entry or attempted illegal re-entry. Carrillo's claim of ineffectiveness of counsel should be rejected.

B.    Counsel Failed to Request INS Video Recorder.

In his second claim of ineffective assistance of counsel, Carrillo claims his trial counsel failed to request the INS video recorder showing his arrest. He argues that the video recorder would have shown him attempting to swim back to Mexico at the time of his arrest. *See* Petitioner's § 2255 motion at p. 5 and supporting Brief at pp. 4, 9-10.

The INS video recorder would not have provided any relief to Carrillo. The only mention of the video recorder in the record is at paragraph 3 of the PSR. That

paragraph explains the Remote Video System's Operator advised the Border Patrol agents that three (3) individuals (including Carrillo) were sitting on the Rio Grande River's edge on September 6, 2002 (PSR, ¶ 3).  The INS video recorder clearly showed that Carrillo had already illegally entered the United States.  In other words, he had already emerged from the river and was sitting near the shore in Brownsville, Texas (PSR, ¶ 3).  AFPD Hajjar had no obligation to his client to obtain the video recording (assuming it still even existed), which would have further bolstered the government's case.

In his Declaration, AFPD Hajjar explains that it was unnecessary to obtain a copy of the videotape of Carrillo's apprehension (assuming it existed) because there was no material fact in dispute (Gov. Exh. C).  AFPD Hajjar states: "[Carrillo] had not disputed the government's version of the facts and at no time had he expressed his desire to go to trial" (Gov. Exh. C).  AFPD Hajjar's performance was not deficient in any manner.  Carrillo's post-sentencing allegations, not raised in his direct appeal, do not lessen the exemplary representation provided by AFPD Hajjar.

In short, Carrillo has not alleged any facts to support a claim of ineffectiveness by his counsel.  Despite Carrillo's self-serving protestations to the contrary, he told the magistrate judge at the Rule 11 hearing that he was fully satisfied with the advice and representation of his counsel (Crim. Doc. 23, p. 15).

In view of the above law and facts, Carrillo's counsel wisely decided not to raise a frivolous issue that had little, if any, chance of success. Carrillo's counsel's performance was not deficient; it was exemplary. Further, Carrillo cannot show prejudice because the government could have easily superseded the indictment to charge attempted illegal re-entry, if the facts had supported such a charge, which they did not. Carrillo's second ground for relief should be rejected.

7.    **Evidentiary Hearing.** Under Rule 8(a) pursuant to 28 U.S.C. foll. § 2255, this Court shall make such disposition of the motion as justice dictates. The allegations raised by Carrillo may properly be resolved on the basis of the record before this Court, which conclusively shows that no relief is appropriate. No evidentiary hearing is required. *United States v. Smith,* 915 F.2d 959, 964 (5th Cir. 1990); *United States v. Santora,* 711 F.2d 41 (5th Cir. 1983).

8.    **Conclusion**. The United States prays that Petitioner Miguel Supinio Carrillo's

Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

Under 28 U.S.C. § 2255 be in all things denied and this action be dismissed with

prejudice pursuant to Rule 8(a), Rules § 2255 proceedings.

> Respectfully submitted,
>
> MICHAEL T. SHELBY
> United States Attorney
>
> David H. Peck
> Assistant United States Attorney
> 910 Travis, Suite 1500
> P. O. Box 61129
> Houston, Texas 77208-1129
> (713) 567-9369
> S.D. TX. ID No. 6295
> TX Bar Card No. 15701980

United States District Cou
Southern District of Tex
FILED

APR 0 1 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NO. CR-B-02-542 |
| | § | |
| VERSUS | § | BROWNSVILLE, TEXAS |
| | § | OCTOBER 24, 2002 |
| MIGUEL SUPINIO CARRILLO | § | 11:09 A.M. TO 2:45 P.M. |

### REARRAIGNMENT

BEFORE THE HON. FELIX RECIO, UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | SEE NEXT PAGE |
| For the Defendant: | SEE NEXT PAGE |
| Court Clerk: | Sally Garcia |
| Court Interpreter: | Karen Pena |
| Court Recorder: | Rita Nieto |

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
713.697.4718 (office)
713.697.4722 (fax)

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.


GOVERNMENT
EXHIBIT
A

**APPEARANCES:**

For the Plaintiff:                    U.S. Attorney's Office
                                      MS. LYNN KIRKPATRICK, AUSA
                                      MR. JOE ESQUIVEL, AUSA
                                      600 E. Harrison, Suite 201
                                      Brownsville, Texas 78520


For the Defendant:                    U.S. Public Defender's Office
                                      MR. PAUL HAJJAR, AFPD
                                      600 E. Harrison, Suite 102
                                      Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NOS. CR-B-02-558 |
| | § | CR-B-02-177 |
| VERSUS | § | |
| | § | BROWNSVILLE, TEXAS |
| GUILLERMO GUERRERO-MORALES | § | OCTOBER 24, 2002 |
| OSCAR MANUEL NAJERA-MACIAS | § | 11:09 A.M. TO 2:45 P.M. |

<u>REARRAIGNMENT</u>

BEFORE THE HON. FELIX RECIO, UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | SEE NEXT PAGE |
| For the Defendant: | SEE NEXT PAGE |
| Court Clerk: | Sally Garcia |
| Court Interpreter: | Karen Pena |
| Court Recorder: | Rita Nieto |

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
713.697.4718 (office)
713.697.4722 (fax)

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

For the Plaintiff:                      U.S. Attorney's Office
                                        MR. JOE ESQUIVEL, AUSA
                                        600 E. Harrison, Suite 201
                                        Brownsville, Texas 78520


For the Defendant:                      U.S. Public Defender's Office
                                        MR. PAUL HAJJAR, AFPD
                                        600 E. Harrison, Suite 102
                                        Brownsville, Texas 78520

1    Please have them step aside here.

2        **(The Court attends to matters not pertaining to this**

3    **proceeding)**

4            THE COURT:  All right, Mr. Hajjar.  Are you ready

5    now, sir?

6            MR. HAJJAR:  Yes, Your Honor.  I apologize.

7        **(Talking off the record)**

8            THE COURT:  Go ahead and swear them in, please.

9        **(The Defendants are sworn)**

10           THE COURT:  Now, let's see.  You tell me that there

11   was a plea agreement with regard to one case, is that correct

12           MR. ESQUIVEL:  Well, Judge, the only agreement that

13   we have is, we dropped it to a 1326(a) and deleted the

14   aggravated felony language on Najera-Macias.

15           THE COURT:  Okay.  And no agreements on the others,

16   is that Ms. Kirkpatrick?

17           MS. KIRKPATRICK:  Correct, Your Honor.

18           THE COURT:  Okay.  All right.  Can each one of

19   you -- Well, first let me go, let's see, Guillermo Guerrero-

20   Morales.

21           DEFENDANT GUERRERO-MORALES:  Yes, sir.

22           THE COURT:  All right.  You are Oscar Manuel Najera

23   Macias?

24           DEFENDANT NAJERA-MACIAS:  Yes, sir.

25           THE COURT:  And you are Miguel Supinio Carrillo, is

1   that correct?

2           DEFENDANT SUPINIO-CARRILLO:  Yes.

3           THE COURT:  Now, can each one of you hear and

4   understand everything the interpreter is saying?

5           ALL DEFENDANTS:  Yes.  Yes, sir.

6           THE COURT:  All right.  If you have any problems

7   hearing or understanding, let me know and we'll get you a new

8   headset.

9           ALL DEFENDANTS:  Yes.

10          THE COURT:  All right.  Because each one of you just

11  took the oath to tell the truth, you have subjected yourself

12  to the laws of perjury.  What this means is that if you answer

13  the Court's questions falsely.  If you lie to this Court here

14  this morning, you could be charged with perjury.  And if you

15  are found guilty of that offense, you could face a term of

16  imprisonment of up to five years.  You would also be subject

17  to a fine of up to $250,000 or both.  You could go to jail for

18  up to five years, and at the same time, you could be fined up

19  to $250,000.  And you would also be placed on at least a

20  three-year term of supervised release.

21          A term of supervised release is a period of

22  time after serving your sentence for the perjury when you

23  would be released under some special conditions.  And if you

24  violated those conditions during that three-year period of

25  time, you could face additional time in jail.  And you would

1    also be subject to a $100 special assessment.

2                  Mr. Guerrero, do you understand the law of

3    perjury and the possible consequences if you violate that la~

4                  DEFENDANT GUERRERO-MORALES:  Yes, sir.

5                  THE COURT:  Mr. Najera?

6                  DEFENDANT NAJERA-MACIAS:  Yes.

7                  THE COURT:  And Mr. Supinio?

8                  DEFENDANT SUPINIO-CARRILLO:  Yes, sir.

9                  THE COURT:  All right.  Mr. Guerrero, how old are

10   you, sir?

11                 DEFENDANT GUERRERO-MORALES:  Thirty-nine years old

12                 THE COURT:  Do you read and write?

13                 DEFENDANT GUERRERO-MORALES:  Yes.

14                 THE COURT:  And how far did you go in school?

15                 DEFENDANT GUERRERO-MORALES:  Sixth grade.

16                 THE COURT:  Okay.  And Mr. Najera, how old are you

17   sir?

18                 DEFENDANT NAJERA-MACIAS:  Thirty-nine years old.

19                 THE COURT:  How far did you -- Do you read and

20   write?

21                 DEFENDANT NAJERA-MACIAS:  No.

22                 THE COURT:  Did you go to school at all?

23                 DEFENDANT NAJERA-MACIAS:  I was at the University

24   Tamaulipas studying law.

25                 THE COURT:  Well, do you read and write?

1              **DEFENDANT NAJERA-MACIAS:**  No.

2              **THE COURT:**  Are you telling me that you're studying

3    law and you don't know how to read or write?

4              **DEFENDANT NAJERA-MACIAS:**  Well, I do read and write

5    but I don't have any money and I can't apply for food stamps.

6              **THE COURT:**  Okay.  But you do know how to read?

7              **DEFENDANT NAJERA-MACIAS:**  Yes.

8              **THE COURT:**  And you know how to write?

9              **DEFENDANT NAJERA-MACIAS:**  Yes.

10             **THE COURT:**  Okay.  Mr. Supinio, how old are you,

11   sir?

12             **DEFENDANT SUPINIO-CARRILLO:**  Twenty-nine years old

13             **THE COURT:**  Do you read and write?

14             **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

15             **THE COURT:**  And how far did you go in school?

16             **DEFENDANT SUPINIO-CARRILLO:**  One year.

17             **THE COURT:**  Okay.  Mr. Guerrero, have you ever been

18   in a mental institution or treated for a mental illness of

19   some kind?

20             **DEFENDANT GUERRERO-MORALES:**  No, never.

21             **THE COURT:**  How about you, Mr. Najera?

22             **DEFENDANT NAJERA-MACIAS:**  Yes.

23             **THE COURT:**  You've been treated for a mental

24   illness?

25             **DEFENDANT NAJERA-MACIAS:**  Yes.

1          THE COURT:  Tell me when was that?

2          DEFENDANT NAJERA-MACIAS:  I was in Rochester,

3    Minnesota in 1993.

4          THE COURT:  And how long were you -- Were you in th

5    hospital?

6          DEFENDANT NAJERA-MACIAS:  Yes, in Rochester,

7    Minnesota.

8          THE COURT:  And what were you being treated for?

9          DEFENDANT NAJERA-MACIAS:  For dementia.

10          THE COURT:  For what?

11          DEFENDANT NAJERA-MACIAS:  For dementia.

12          THE COURT:  For dementia.  And were you released

13    from that hospital?

14          DEFENDANT NAJERA-MACIAS:  Yes.

15          THE COURT:  When?

16          DEFENDANT NAJERA-MACIAS:  In '96.

17          THE COURT:  All right.  So, you were in that

18    hospital for three years?

19          DEFENDANT NAJERA-MACIAS:  Yeah.

20          THE COURT:  And when you got out, were you taking

21    medication?

22          DEFENDANT NAJERA-MACIAS:  Then I was in an insane

23    asylum in Mexico.

24          THE COURT:  All right.  And were you released from

25    that hospital?

1          **DEFENDANT NAJERA-MACIAS:**  Yes.

2          **THE COURT:**  In what year?

3          **DEFENDANT NAJERA-MACIAS:**  That same year, in '96.

4    was just there for six months, that was all.

5          **THE COURT:**  So, are you taking medication now?

6          **DEFENDANT NAJERA-MACIAS:**  No.

7          **THE COURT:**  Are you supposed to?

8          **DEFENDANT NAJERA-MACIAS:**  Yes.

9          **THE COURT:**  All right.  Do you understand the

10   difference between right and wrong?

11         **DEFENDANT NAJERA-MACIAS:**  Yes.

12         **THE COURT:**  Mr. Hajjar, do you find that Mr. Najera

13   is competent and able to assist you in his defense?

14         **DEFENDANT NAJERA-MACIAS:**  Your Honor, for the

15   record, I initially requested a medical exam.  However, after

16   he came back from Springfield, he was accepted by the -- to be

17   competent.  And for the purpose of the charges of illegal

18   entry after deportation and the permission (indiscernible), I

19   believe he understands.

20         **THE COURT:**  Okay.  Do you understand what's going

21   here today, Mr. Najera?

22         **DEFENDANT NAJERA-MACIAS:**  Yes.

23         **THE COURT:**  Okay.  All right.  How about you, Mr.

24   Supinio, are you taking any drugs or medication?

25         **DEFENDANT SUPINIO-CARRILLO:**  No, nothing.

1          **THE COURT:**  All right.  I want each one of you to

2   understand that you have a right to plead guilty before a

3   district judge.  A district judge is judge of higher authori-

4   than myself.  Each one of you has signed a consent requesting

5   that I take your plea here this morning.

6          I want you to understand that I am not the

7   judge who is going to find you guilty, and I'm not the judge

8   who is going sentence you.  But I will prepare a report and

9   recommendation and send it to the district judge.  And based

10  on that report and recommendation, the judge, the district

11  judge, could find you guilty and sentence you.

12         Knowing that, do you still wish me to take you

13  plea?  Mr. Guerrero?

14         **DEFENDANT GUERRERO-MORALES:**  Yes.

15         **THE COURT:**  Mr. Najera?

16         **DEFENDANT NAJERA-MACIAS:**  Yes.

17         **THE COURT:**  And Mr. Supinio?

18         **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

19         **THE COURT:**  All right.  Mr. Guerrero, have you

20  received a copy of the indictment in your case?

21         **DEFENDANT GUERRERO-MORALES:**  Well, it wasn't -- I

22  haven't receive a copy yet, but --

23         **(Talking off the record)**

24         **DEFENDANT GUERRERO-MORALES:**  Yes, that one, yes.

25         **THE COURT:**  All right.  How about you, Mr. Najera?

1          DEFENDANT NAJERA-MACIAS:  Yes.

2          THE COURT:  And Mr. Supinio?

3          DEFENDANT SUPINIO-CARRILLO:  Yes, I did.

4          THE COURT:  Mr. Guerrero, have you discussed fully

5    the charges contained in that indictment with your attorney?

6          DEFENDANT GUERRERO-MORALES:  Yes, I did talk to him

7    about it.

8          THE COURT:  All right.  Mr. Najera?

9          DEFENDANT NAJERA-MACIAS:  Yeah.

10         THE COURT:  Mr. Supinio?

11         DEFENDANT SUPINIO-CARRILLO:  Yes, also.

12         THE COURT:  All right.  And Mr. Guerrero, did your

13   attorney answer your questions and give you advice about this

14   case?

15         DEFENDANT GUERRERO-MORALES:  Yes.

16         THE COURT:  Mr. Najera?

17         DEFENDANT NAJERA-MACIAS:  Yes.

18         THE COURT:  Mr. Supinio?

19         DEFENDANT SUPINIO-CARRILLO:  Yes.  Yes, sir.

20         THE COURT:  All right.  Mr. Guerrero, are you fully

21   satisfied with the counsel, representation and advice given

22   you in this matter by your attorney?

23         DEFENDANT GUERRERO-MORALES:  I'm a little bit

24   doubtful.

25         THE COURT:  Okay.

1      **DEFENDANT GUERRERO-MORALES:**  If I could just talk t

2  him a little furthermore, if possible.  A little bit.  Just

3  little.

4      **THE COURT:**  Well, we should have been down the roa

5  on this already.  Mr. Hajjar, why don't we do this.  Let's

6  reset these pleas for this afternoon, and I'll give you a

7  little bit more time to prepare them a little bit more

8  adequately.

9          We'll be in recess until two o'clock.

10    **(Recess from 11:25 a.m. to 2:04 p.m.)**

11                   **AFTER RECESS**

12      **THE COURT:**  Please be seated.

13    **(Talking off the record)**

14      **THE COURT:**  Okay.  Mr. Hajjar, are we ready to

15  proceed?

16      **MR. HAJJAR:**  Yes, Your Honor.

17      **THE COURT:**  All right.  Before we do let's --

18    **(The Court attends to matters unrelated to these cases)**

19      **THE COURT:**  All right.  Let's call Cause No. B-02-

20  558, Guillermo Guerrero-Morales.

21      **MR. HAJJAR:**  Paul Hajjar for Mr. Guerrero-Morales.

22      **THE COURT:**  Cause No. B-02-177, Oscar Manuel Najer

23  Macias.

24      **MR. ESQUIVEL:**  Joe Esquivel for the Government on

25  all three.  We're ready to proceed on 1326(a) on them.

1          THE COURT:  All right.  B-02-542, Miguel Supinio-
2     Carrillo.

3          MR. HAJJAR:  Paul Hajjar for Mr. Supinio-Carrillo

4          THE COURT:  Your Honor, if I may clarify something'

5               Before lunch, my client, Mr. Guillermo-Morales
6     expressed some doubts about the conversation we've had and
7     advice given him.  And I discussed this matter with him.  What
8     he was basically concerned about was two factors, and I
9     explained this is not the time to raise them.

10              One of them, he knows he's been convicted of
11    the felony of vehicle theft.  And what he does not understand
12    is he pled guilty and was convicted of that.  He disputes the
13    fact that he stole the vehicle.  And I said this is not
14    something that could be addressed at this court.  And that
15    case had some confusion in his mind in this process.

16              The other part, which I believe the Court wou
17    advise him on it anyway, when we're going over the Sentencing
18    Guideline, I explained to him, this is just an estimate, as
19    could not give you a certain sentence that would the
20    consequence of such a plea.  And I think that there'll be a
21    PSI that will be prepared and we will have an opportunity to
22    object.

23          THE COURT:  All right.  Well, let's swear them in
24    again and let's start this process.

25          (The Defendants are sworn)

1          THE COURT:  All right.  You are Guillermo Guerrero-

2     Morales?

3          DEFENDANT GUERRERO-MORALES:  Yes.

4          THE COURT:  You are Oscar Manuel Najera-Macias?

5          DEFENDANT NAJERA-MACIAS:  Yes.

6          THE COURT:  You are Miguel Supinio-Carrillo?

7          DEFENDANT SUPINIO-CARRILLO:  Yes.

8          THE COURT:  Can all of you hear and understand

9     everything the interpreter is saying?

10         ALL DEFENDANTS:  Yes.

11         THE COURT:  All right.  If you have any problems,

12    please let me know and I'll get you a new headset.

13              Because each one of you just took the oath to

14    tell the truth, you have subjected yourself to the laws of

15    perjury.  This morning I explained to you that if you answere

16    this Court's questions falsely; if you lie to the Court, you

17    could be charged with perjury.

18              And if that happens, and you're found guilty (

19    that offense, you could face five years in prison.  In

20    addition to that and at the same time, you would also be

21    subject to a fine of up to $250,000, and you would be subjec

22    to at least a three-year term of supervised release.

23              A term of supervised release is a period of

24    time after serving your sentence for that perjury when you

25    would be released under some special conditions.  And if you

1    violated those conditions during that three-year period of

2    time, you could face additional time in jail.

3            And you would also be subject to a $100 specia

4    assessment.

5            Now, Mr. Guillermo-Morales, do you understand

6    the law of perjury and the possible consequences for violatin

7    that law?

8            **DEFENDANT GUERRERO-MORALES:**  Yes, sir.

9            **THE COURT:**  Mr. Najera?

10           **DEFENDANT NAJERA-MACIAS:**  Yes.

11           **THE COURT:**  Mr. Supinio?

12           **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

13           **THE COURT:**  All right.  Now, let's see, Mr.

14   Guillermo Guerrero, you told me that you're 39 years of age.

15   You do read and write, and you have a sixth grade education,

16   is that correct?

17           **DEFENDANT GUERRERO-MORALES:**  Yes.

18           **THE COURT:**  All right.  And Mr. Najera, you told me

19   that you're 39 years of age, as well, and that you read and

20   write, and that you also have some education at the universit

21   level.  Is that correct?

22           **DEFENDANT NAJERA-MACIAS:**  Yes.

23           **THE COURT:**  All right.  And Mr. Supinio, you told r

24   that you were 29 years of age, that you do read and write, ar

25   you have one of schooling.  Is that correct?

1    **DEFENDANT SUPINIO-CARRILLO:** Yes, sir.

2    **THE COURT:** All right. I want to remind you of wha[t]

3    I told you this morning, that I'm -- If I take your plea that

4    I am not the judge who is going to find you guilty or senten[ce]

5    you. You have a right to plead guilty before a district

6    judge, which is a judge of higher authority than myself. But

7    each one of you has signed a consent. And I just want you t[o]

8    know that if I take your plea, I'm going to prepare a report

9    and recommendation. And based on that report and

10   recommendation, the district judge could find you guilty and

11   sentence you.

12          Knowing that, Mr. Guerrero, do you still wish

13   me to take your plea?

14   **DEFENDANT GUERRERO-MORALES:** Yes.

15   **THE COURT:** Mr. Najera?

16   **DEFENDANT NAJERA-MACIAS:** Yes.

17   **THE COURT:** Mr. Supinio?

18   **DEFENDANT SUPINIO-CARRILLO:** Yes.

19   **THE COURT:** Any objections from defense counsel?

20   **MR. HAJJAR:** No, Your Honor.

21   **THE COURT:** Any objections from the Government?

22   **MR. ESQUIVEL:** None from the Government, Your Hono[r].

23   **THE COURT:** Now, also, Mr. Guerrero, I asked you i[f]

24   you had received a copy of the indictment in your case. And

25   you told me that you had?

1          **DEFENDANT GUERRERO-MORALES:**  Yes.  Yes, Your Honor.

2          **THE COURT:**  And same thing with you, Mr. Najera.

3     that correct?

4          **DEFENDANT NAJERA-MACIAS:**  Yes, sir.

5          **THE COURT:**  Mr. Supinio, same thing with you?

6          **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

7          **THE COURT:**  And each one of you told me that you ha

8     discussed the charges with your attorney, he had answered you

9     questions and given you advice.

10              Is that true, Mr. Guerrero?

11         **DEFENDANT GUERRERO-MORALES:**  Yes.

12         **THE COURT:**  Mr. Najera?

13         **DEFENDANT NAJERA-MACIAS:**  Yes.

14         **THE COURT:**  And Mr. Supinio?

15         **DEFENDANT SUPINIO-CARRILLO:**  Yes.

16         **THE COURT:**  And I believe this the place where we

17    left off, because I asked you, Mr. Guerrero, are you fully

18    satisfied with the advice and representation and counsel give

19    to you by your attorney?

20         **DEFENDANT GUERRERO-MORALES:**  Yes, yes.

21         **THE COURT:**  Mr. Najera?

22         **DEFENDANT NAJERA-MACIAS:**  Yes.

23         **THE COURT:**  Mr. Supinio?

24         **DEFENDANT SUPINIO-CARRILLO:**  Yes.

25         **THE COURT:**  All right.  Now, Mr. Guerrero, this

1    morning you expressed some hesitation with regard to whether

2    you were satisfied with your attorney's services or not.  You

3    had an opportunity to meet with him now over the lunch hour

4    and so forth.  Do you still feel the same, or are you

5    satisfied with his services?

6              **DEFENDANT GUERRERO-MORALES:**  Yes, I am.

7              **THE COURT:**  Very good.

8              **DEFENDANT GUERRERO-MORALES:**  I am satisfied.  Yes,

9    Your Honor.

10             **THE COURT:**  All right.  And let's see, Mr. Hajjar

11   you find that Mr. Guerrero-Morales, Mr. Najera-Macias, and M

12   Supinio-Carrillo are all competent and able to assist you in

13   their defense?

14             **MR. HAJJAR:**  Yes, Your Honor.

15             **THE COURT:**  All right.  Now, Mr. Guerrero and Mr.

16   Supinio, the Government has told me, and your attorney has

17   confirmed that there is no agreement between yourselves and

18   the Government in exchange for your guilty plea.  No one has

19   promised you to reduce any points or to limit your offense

20   conduct in any way.

21             In other words, no one has promised you

22   anything in exchange for your guilty plea.

23             Mr. Guerrero, is that the way you understand

24   the circumstances?

25             **DEFENDANT GUERRERO-MORALES:**  Yes.

1          **THE COURT:**  Mr. Supinio?

2          **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

3          **THE COURT:**  All right.  Mr. Najera, in your case,

4    there has been an agreement.  The Government tells me that

5    originally you were charged with violating two sections of

6    Title 8, United States Code, Section 1326.  You were charged

7    with violating Section (a) and (b) of that law.  And you had

8    been charged originally with being an alien who had been

9    convicted of an aggravated felony.  And as a result of that,

10   you were deported from the United States, and then you

11   reentered this country illegally, and without the consent of

12   the Attorney General of the United States.

13          Now, those charges carry with it a maximum

14   penalty of up to 20 years in jail.  But through the efforts of

15   your attorney and the Government, they have agreed to reduce

16   the charges against you in exchange for your guilty plea.  And

17   now they are just seeking a conviction against you for

18   violation of Title 8, United States Code, Section 1326(a).

19   And that carries with it a maximum penalty of only two years

20          Now, is that the way you understand the

21   agreement between yourself and the Government?

22          **DEFENDANT NAJERA-MACIAS:**  Yes.

23          **THE COURT:**  And that agreement is not in writing.

24   Is that correct Mr. --

25          **MR. HAJJAR:**  That is correct.

1       **THE COURT:**  All right.  Is there any other agreemer

2  that you think is part of your agreement with the Government

3  that I have not mentioned here this afternoon?

4       **DEFENDANT NAJERA-MACIAS:**  No.

5       **THE COURT:**  Is that the agreement, Mr. Hajjar?

6       **MR. HAJJAR:**  That's correct.

7       **THE COURT:**  All right.  Mr. Najera, I want you to

8  understand that the terms of the agreement that  you have wit

9  the Government are merely recommendations to the Court.  The

10  Court does not have to accept those recommendations.  And if

11  the Court does not accept those recommendations, it does not

12  have to give you an opportunity to withdraw your guilty plea

13  And that the Court could sentence you to a sentence might be

14  more severe than you anticipate.

15       Do you understand that the Court has that

16  authority, Mr. Najera?

17       **DEFENDANT NAJERA-MACIAS:**  Yes.

18       **THE COURT:**  All right.  Knowing that, do you still

19  wish the Court to accept this plea agreement?

20       **DEFENDANT NAJERA-MACIAS:**  Yes.

21       **THE COURT:**  Very well.  All right, now, Mr.

22  Guerrero, Mr. Supinio, there is no agreement in your case.

23  that the way you understand the circumstances, as well?

24       **DEFENDANT GUERRERO-MORALES:**  Oh, yes.

25       **THE COURT:**  All right.

1    **DEFENDANT SUPINIO-CARRILLO:**  Yes.

2    **THE COURT:**  All right.  Now, tell me in your own

3    words, Mr. Guerrero, what it is you understand you're being

4    charged with in your case?

5    **DEFENDANT GUERRERO-MORALES:**  This case right now?

6    **THE COURT:**  Yes.  What are the allegations against

7    you, in your own words?

8    **DEFENDANT GUERRERO-MORALES:**  Well, I'm here now in

9    the States, and that I have a felony, and I don't have

10   permission from the Attorney General to be here now in the

11   States.

12   **THE COURT:**  That's correct.  There is one other

13   little element that I want you to understand.  They say here

14   that you were an alien, who had previously been convicted of

15   an aggravated felony.

16   **DEFENDANT GUERRERO-MORALES:**  Yes.

17   **THE COURT:**  And then you were deported from the

18   United States.

19   **DEFENDANT GUERRERO-MORALES:**  Yes.

20   **THE COURT:**  And then they say that on August the

21   28th when they found you here, they determined that you had

22   reentered illegally, and without the consent of the Attorney

23   General.  Is that the way you understand the charges against

24   you?

25   **DEFENDANT GUERRERO-MORALES:**  Yes, I did.  Correct,

1    Your Honor.

2            THE COURT:  All right.  This is a violation of Titl[

3    8, United States Code, Section 1326(a) and (b).

4            Now, are those the same charges that you

5    discussed with your attorney, and that advised you on?

6            DEFENDANT GUERRERO-MORALES:  Yes, they are okay.

7            THE COURT:  Mr. Najera, do you understand, sir

8    that -- Tell me in your own words what you understand you're

9    being charged with?

10            DEFENDANT NAJERA-MACIAS:  Illegal alien.

11            THE COURT:  That's correct.  What they say is that

12    you are an alien, who had previously been deported from the

13    United States.  And that on or about March the 3rd of 2002,

14    you reentered this country illegally and without the consent

15    of the Attorney General of the United States.

16            Is that the way you understand these charges?

17            DEFENDANT NAJERA-MACIAS:  Yes.

18            THE COURT:  Are these the same charges that you

19    discussed with your attorney and that he advised you on?

20            DEFENDANT NAJERA-MACIAS:  Yes.

21            THE COURT:  All right.  Mr. Supinio, tell me, sir,

22    in your words what it is you understand you're being charged

23    with?

24            DEFENDANT SUPINIO-CARRILLO:  I have a felony.  And

25    they deported me September the 4th.  And I came back in the

1    6th of September.  I was just out like 24 hours on the

2    outside, out of the country.

3            THE COURT:  All right.  That's exactly right.

4    There's one other element here that's part of this allegation

5    And that is that when you returned, you did not have the

6    consent of the Attorney General of the United States to make

7    reapplication for admission into this country.

8            Is that the way you understand these charges?

9            DEFENDANT SUPINIO-CARRILLO:  Yes.  Yes.

10           THE COURT:  All right.  And this also is a violatic

11   of Title 8, United States Code, Section 1326(a) and (b).

12           Are the same charges that you've discussed wit

13   your attorney and that he advised you on?

14           DEFENDANT SUPINIO-CARRILLO:  Yes.

15           THE COURT:  All right.  Do each of you understand

16   that the charges you are facing are felony charges.  And that

17   if you are adjudged guilty of this offense, if your plea is

18   accepted and you are adjudged guilty of this offense, in you:

19   case, Mr. Guerrero, and in your case, Mr. Supinio, you could

20   be sentenced to a jail term of up to 20 years.  At the same

21   time, you could be fined up to $250,000.  And you would also

22   be subject to at least a three-year term of supervised

23   release.

24           And a term of supervised release is a period o

25   time after serving your sentence for this illegal reentry whe

1    you would be released under some special conditions.  And if

2    you violate any of those conditions during that three-year

3    period of time, you could face additional time in jail.  And

4    you would also be subject to a $100 special assessment.

5              Mr. Guerrero, do you understand the range of

6    punishment for this offense?

7              DEFENDANT GUERRERO-MORALES:  Yes, what you said,

8    yeah.

9              THE COURT:  And Mr. Supinio, do you understand the

10   range of punishment?

11             DEFENDANT SUPINIO-CARRILLO:  Yes, yes.

12             THE COURT:  Mr. Najera, in your case, if your plea

13   is accepted and you are adjudged guilty of this offense, you

14   could face a term of imprisonment of two years.  At the same

15   time, you would be subject to a fine of up to $250,000.  You

16   would also be subject to at least one-year term of supervised

17   release.  And as I've explained already, a term of supervised

18   release is a period of time after serving your sentence for

19   this illegal reentry when you would be released under some

20   special conditions.  And if you violated those conditions

21   during this one-year period of time, you could face additional

22   time in jail.

23             Now, do you understand the range of punishment

24   for this offense?

25             DEFENDANT NAJERA-MACIAS:  Yes.

1          **THE COURT:**  All right.  Mr. Hajjar, are you

2     satisfied, Mr. Guerrero, Mr. Najera and Mr. Supinio all

3     understand the nature of the charges that have been filed

4     against them and the possible consequences, that is the

5     sentencing ranges?

6          **MR. HAJJAR:**  Yes, Your Honor.

7          **THE COURT:**  Also, I failed to inquire of this at th

8     very beginning, but this a good point to inquire.

9          Do you have any objections if I take all of

10    these pleas at the same time, Mr. Hajjar?

11         **MR. HAJJAR:**  No problem with that, Your Honor.

12         **THE COURT:**  Any from the Government?

13         **MR. ESQUIVEL:**  No, Your Honor.

14         **THE COURT:**  All right.  Now, I want to speak to all

15    three of you very briefly about the Sentencing Guidelines.

16    The Sentencing Guidelines are the system that we use in this

17    country to sentence individual who come before the court

18    accused and convicted of violating the laws of this country.

19         I want you to know that the Court will not be

20    able to determine what your guideline sentence is until after

21    a presentence report has been completed by the Probation

22    Department.  And then only after you and the Government have

23    had an opportunity to challenge the reported facts and the

24    application of the guidelines recommended by the probation

25    officer.

1          Do you understand that, Mr. Guerrero?

2          DEFENDANT GUERRERO-MORALES:  Yes.

3          THE COURT:  Mr. Najera?

4          DEFENDANT NAJERA-MACIAS:  Yes.

5          THE COURT:  Mr. Supinio?

6          DEFENDANT SUPINIO-CARRILLO:  Yes.

7          THE COURT:  Also, I want you to understand that any

8    sentence that you might receive may be different from any

9    estimate that your attorney may have given you.

10          Do you understand that, Mr. Guerrero?

11          DEFENDANT GUERRERO-MORALES:  Yes.

12          THE COURT:  Mr. Najera?

13          DEFENDANT NAJERA-MACIAS:  Yes.

14          THE COURT:  And Mr. Supinio?

15          DEFENDANT SUPINIO-CARRILLO:  Yes.

16          THE COURT:  All right.  Now, also, I want you to

17   understand that parole has been abolished in the federal

18   system.  So that if you're sentenced to prison, you will not

19   be released on parole.

20          Do you understand that, Mr. Guillermo Guerrero

21          DEFENDANT GUERRERO-MORALES:  Yes.

22          THE COURT:  Mr. Najera?

23          DEFENDANT NAJERA-MACIAS:  Yes.

24          THE COURT:  Mr. Supinio?

25          DEFENDANT SUPINIO-CARRILLO:  Yes.

1    **THE COURT:**  All right.  Now, I want you to also

2  understand that once your guideline range has been determined

3  by the Court, the Court has the authority under some

4  circumstances to depart from the guidelines.  And the Court

5  could impose a sentence that could be more severe, or perhaps

6  even less severe than what is called for by the guidelines.

7    Mr. Guerrero, do you understand that the Court

8  has that authority?

9    **DEFENDANT GUERRERO-MORALES:**  Yes.

10    **THE COURT:**  Mr. Najera?

11    **DEFENDANT NAJERA-MACIAS:**  Yes.

12    **THE COURT:**  Mr. Supinio?

13    **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

14    **THE COURT:**  All right.  Now, by pleading guilty, you

15  are also giving up your rights to appeal this case.  You're

16  giving your right to appeal the sentence in this matter, and

17  the manner how it was determined.  You're giving up your

18  rights to appeal the guilt or innocence of your case.  You

19  will retain the right to appeal any illegal sentence or any

20  claims that you might have for ineffective assistance of

21  counsel or prosecutorial misconduct.

22    Mr. Guerrero, do you understand that you're

23  giving up your right to appeal by pleading guilty, except for

24  those instances that I just mentioned that you will retain?

25    **DEFENDANT GUERRERO-MORALES:**  Yes.

1  you that you are entitled to a trial by a jury in this case,

2  Mr. Guerrero?

3         **DEFENDANT GUERRERO-MORALES:**  Yes.

4         **THE COURT:**  Mr. Najera?

5         **DEFENDANT NAJERA-MACIAS:**  Yes.

6         **THE COURT:**  Mr. Supinio?

7         **DEFENDANT SUPINIO-CARRILLO:**  Yes.

8         **THE COURT:**  All right.  Now, at this trial, you

9  would be presumed innocent.  And the Government would be

10  required to prove you guilty beyond a reasonable doubt before

11  you can be found guilty.  And you do not have to prove that

12  you were innocent.

13         Do you understand those rights, Mr. Guerrero?

14         **DEFENDANT GUERRERO-MORALES:**  Yes.

15         **THE COURT:**  Mr. Najera?

16         **DEFENDANT NAJERA-MACIAS:**  Yes.

17         **THE COURT:**  Mr. Supinio?

18         **DEFENDANT SUPINIO-CARRILLO:**  Yes, sir.

19         **THE COURT:**  Also, you would have the right to

20  require the witnesses for the Government to come to court to

21  testify in your presence.  And your attorneys would be given

22  the opportunity to cross examine the witnesses presented

23  against you by the Government.  He could object to the

24  evidence presented against you by the Government.  And he

25  could present evidence on your behalf.

1          Now, do you understand those rights, Mr.

2  Guerrero?

3          **DEFENDANT GUERRERO-MORALES:**  Yes.

4          **THE COURT:**  Mr. Najera?

5          **DEFENDANT NAJERA-MACIAS:**  Yes.

6          **THE COURT:**  Mr. Supinio?

7          **DEFENDANT SUPINIO-CARRILLO:**  Yes.

8          **THE COURT:**  You also have the right to be

9  represented by an attorney.  And this is a right which you've

10  already exercised, because the Court has appointed the Public

11  Defender to represent you.  But the attorney, if you could no

12  afford one would be appointed to you at no cost.  And his

13  responsibility would be to investigate your case, to represe

14  you, to explain the law to you and your chances of winning o

15  losing.  He would represent you in all aspects of the case.

16          Do you understand this right, Mr. Guerrero?

17          **DEFENDANT GUERRERO-MORALES:**  Yes.

18          **THE COURT:**  Mr. Najera?

19          **DEFENDANT NAJERA-MACIAS:**  Yes.

20          **THE COURT:**  Mr. Supinio?

21          **DEFENDANT SUPINIO-CARRILLO:**  Yes.

22          **THE COURT:**  Now, at this trial, you also have the

23  right to testify in your own defense, if you choose to do so

24  But you also have the right not to testify.  And if you choo

25  not to testify, it cannot be used or held against you in any

1  way.

2          Do you understand those rights, Mr. Guerrero?

3          **DEFENDANT GUERRERO-MORALES:**  Yes.

4          **THE COURT:**  Mr. Najera?

5          **DEFENDANT NAJERA-MACIAS:**  Yes.

6          **THE COURT:**  Mr. Supinio?

7          **DEFENDANT SUPINIO-CARRILLO:**  Yes.

8          **THE COURT:**  All right.  Now, if you plead guilty an

9  the Court accepts your plea, do you understand that you will

10 give up your right to a trial altogether?  There will be no

11 trial.  The Court will simply enter a judgment of guilty,

12 based on your guilty plea and sentence you after considering

13 presentence report.

14          Do you understand that, Mr. Guerrero?

15         **DEFENDANT GUERRERO-MORALES:**  Yes.

16         **THE COURT:**  Mr. Najera?

17         **DEFENDANT NAJERA-MACIAS:**  Yes.

18         **THE COURT:**  Mr. Supinio?

19         **DEFENDANT SUPINIO-CARRILLO:**  Yes.

20         **THE COURT:**  Also, each of one you has a right to

21 remain silent.  You don't have to say anything unless you wan

22 to.  But this is a right that you have to give up, because I'

23 going to ask each one of you questions about what you did in

24 order to satisfy myself that you are guilty as charged.  And

25 you will have to acknowledge your guilt.

1            Do you understand that you have that right, Mr
2    Guerrero, but, that if you plead guilty, you'll have to give
3    that right up?

4            **DEFENDANT GUERRERO-MORALES:**  Yes.

5            **THE COURT:**  Mr. Najera?

6            **DEFENDANT NAJERA-MACIAS:**  Yes.

7            **THE COURT:**  Mr. Supinio?

8            **DEFENDANT SUPINIO-CARRILLO:**  Yes.

9            **THE COURT:**  All right.  Also, you have the right to
10   the issuance of subpoenas to compel witnesses to come testify
11   in your defense.  Sometimes there may be somebody in the
12   community that knows something about your case that could help
13   you.  But they don't want to come forward because they have to
14   go to work, or they're afraid to get involved with prosecutor
15   and the courts and police.  And they'd rather not come.  Well
16   if you have a witness that's reluctant and does not want to
17   come, or any kind of witness, you have the right to ask this
18   Court for an order, a subpoena to compel that person to come
19   here to testify in your defense.

20           Do you understand those rights, Mr. Guerrero?

21           **DEFENDANT GUERRERO-MORALES:**  Yes.

22           **THE COURT:**  Mr. Najera?

23           **DEFENDANT NAJERA-MACIAS:**  Yes.

24           **THE COURT:**  Mr. Supinio?

25           **DEFENDANT SUPINIO-CARRILLO:**  Yes.

1      THE COURT:  All right.  Do you understand that if

2  you plead guilty that you will waive and give up all of these

3  rights that we have just discussed?

4           Mr. Guerrero?

5      DEFENDANT GUERRERO-MORALES:  Yes.

6      THE COURT:  Mr. Najera?

7      DEFENDANT NAJERA-MACIAS:  Yes.

8      THE COURT:  And Mr. Supinio?

9      DEFENDANT SUPINIO-CARRILLO:  Yes.

10     THE COURT:  All right.  Now, look, I've told each

11  one of you what you're charged with, what kind of sentences

12  you're looking at.  We've talked about the plea agreement in

13  your case, Najera.  We've talked about the Sentencing

14  Guidelines.  We've talked about your rights under the laws and

15  Constitution of the United States.  We've talked about all

16  these things, including the fact that you're giving up your

17  rights to appeal this matter.

18           Knowing everything that I've told you,

19  understanding all of that, do you still wish to plead guilty?

20           Mr. Guerrero?

21     DEFENDANT GUERRERO-MORALES:  Oh, yes.

22     THE COURT:  Mr. Najera?

23     DEFENDANT NAJERA-MACIAS:  Yes.

24     THE COURT:  And Mr. Supinio?

25     DEFENDANT SUPINIO-CARRILLO:  Yes.

1  forget.

2              Are you satisfied that all your clients

3  understand the nature of the charges and the possible

4  consequences of their plea, Mr. Hajjar?

5              **MR. HAJJAR:**  Yes, sir.

6              **THE COURT:**  All right.  Please arraign Guillermo

7  Guerrero-Morales?

8              **MR. ESQUIVEL:**  United States of America versus

9  *Guillermo Guerrero-Morales*, Criminal No. B-02-558.

10             Indictment:  The Grand Jury charges on or abou

11 August 28th, 2002, in the Southern District of Texas, and

12 within the jurisdiction of the Court, Defendant Guillermo

13 Guerrero-Morales, an alien who had previously been denied

14 admission, excluded, deported and removed, after having been

15 convicted of an aggravated felony, knowingly and unlawfully

16 was present in the United States, having been found in Camer

17 County, Texas.  The defendant having not obtained the consen

18 of the Attorney General of the United States for reapplicati

19 by the defendant for admission into the United States.

20             In violation of Title 8, United States Code,

21 Section 1326(a) and (b).  A True Bill signed by the

22 Foreperson of the Grand Jury.

23             Mr. Guerrero-Morales, did you understand the

24 indictment as read to you, sir?

25             **DEFENDANT GUERRERO-MORALES:**  Yes.

1          MR. ESQUIVEL:  And how do you plead guilty or not

2     guilty?

3          DEFENDANT GUERRERO-MORALES:  Well, guilty.

4          THE COURT:  Are you pleading guilty because you are

5     guilty?

6          DEFENDANT GUERRERO-MORALES:  Yes, because I did com

7     into the United States.  And yes, because I have a felony.

8          THE COURT:  Did anyone force you or threaten you or

9     promise you anything to get you to plead guilty and give up

10    your rights here today?

11         DEFENDANT GUERRERO-MORALES:  No, no one.

12         THE COURT:  Okay.  All right, listen very carefully

13    What are the facts in this case, Mr. Esquivel?

14         MR. ESQUIVEL:  Your Honor, the facts will show that

15    on August 28th, 2002, the defendant, citizen of Mexico, was i

16    encountered near La Paloma, Texas and was encountered by

17    border patrol agents.  The defendant admitted that he was her

18    illegally.  Records check revealed the defendant was deported

19    on November 7th, 1999 through Houston, Texas, after an

20    aggravated felony of vehicle theft in Los Angeles, California

21    on April 2nd, 1998.

22              The defendant had not received permission of

23    the Attorney General of the United States to apply for

24    readmission into the United States.

25         THE COURT:  All right, Mr. Guerrero, you've heard

1  what the Government has said.  Let me ask you this.  Is it
2  true that you were convicted in Los Angles, or in California
3  for vehicle theft back in April of 1998?  Is that true?
4        DEFENDANT GUERRERO-MORALES:  As far as the charges
5  the accusation, I didn't rob any cars.  That's what I want to
6  fix.  That's what they're charging me.
7        THE COURT:  My question is, were you convicted of
8  that?
9        DEFENDANT GUERRERO-MORALES:  Well, I never did go
10 prison for robbery of a vehicle.  I don't know why they have
11 those charges placed against me.
12       THE COURT:  All right.  What -- Do you have a
13 document that shows a conviction, Mr. Esquivel, or Mr. --
14       MR. HAJJAR:  Your Honor, I've seen the charges, and
15 asked him if he pled guilty to this charge, and he told he
16 has.  I understand he's disputing whether he did the action
17 itself of stealing a car.  But he did plead guilty of that.
18       THE COURT:  But my question is whether -- I'm not
19 asking you if you did it or didn't do it.  My question is, d
20 you have a conviction for that offense?
21       DEFENDANT GUERRERO-MORALES:  No.
22       THE COURT:  All right.  What do you have to suppor
23 the argument?
24       MR. ESQUIVEL:  I don't have the (indiscernible).
25 says that he was convicted on 4/2/98 of vehicle theft,

1   Guillermo Guerrero-Morales, date of birth 7/21/1963, in Los

2   Angeles, California.

3          THE COURT:  All right.  Do you deny that you were

4   convicted of that?

5          DEFENDANT GUERRERO-MORALES:  Well, I just -- perhaps

6   the police placed those charges against me or whatever.  But

7   haven't stolen any vehicles or anything like that.

8          THE COURT:  Is there a possibility there is a theft

9   from a vehicle as opposed to theft of a vehicle?

10         MR. ESQUIVEL:  That's a possibility, Your Honor.

11  Yes.

12         THE COURT:  Were you arrested for stealing something

13  from a vehicle?

14         DEFENDANT GUERRERO-MORALES:  I can recall that.

15         THE COURT:  Let me ask you this.  Were you convicted

16  of any felony in the United States?

17         DEFENDANT GUERRERO-MORALES:  Yes.  Well, truly, yes

18  I was.

19         THE COURT:  Tell me what you were convicted for?

20         DEFENDANT GUERRERO-MORALES:  Grand theft of a

21  person.

22         THE COURT:  Was that in Los Angeles?

23         DEFENDANT GUERRERO-MORALES:  In Los Angeles.

24         THE COURT:  In 1998?

25         DEFENDANT GUERRERO-MORALES:  Yes.

1          THE COURT:  All right.  So, it's a possibility that
2   you didn't understand what the charges were.  But you do adm:
3   that you --
4          DEFENDANT GUERRERO-MORALES:  Yes, yes, I do confess
5   that I did do it.
6          THE COURT:  All right.  Now, is it true then that :
7   1999 you were deported from the United States in November of
8   1999?
9          DEFENDANT GUERRERO-MORALES:  Yes.
10         THE COURT:  Now, they tell me that they found you :
11  La Paloma, Texas, here on August the 28th of 2002.  My
12  question to you is how did you enter the United States?
13         DEFENDANT GUERRERO-MORALES:  Well, through the
14  river.
15         THE COURT:  You entered illegally and without
16  inspection?
17         DEFENDANT GUERRERO-MORALES:  Yes.
18         THE COURT:  Did you have the consent of the Attorn
19  General of the United States to enter this country?
20         DEFENDANT GUERRERO-MORALES:  No.
21         THE COURT:  All right.  Are those the facts, Mr.
22  Hajjar?
23         MR. HAJJAR:  Yes, sir.
24         THE COURT:  Are you satisfied that that will suppo
25  the plea, the Rule 11 plea?

1          MR. HAJJAR:  Yes, sir.

2          MR. ESQUIVEL:  Your Honor, we also show a convictio

3    of grand theft of a person.

4          THE COURT:  All right.

5          DEFENDANT GUERRERO-MORALES:  Yes, that's the one.

6          THE COURT:  Okay.

7          DEFENDANT GUERRERO-MORALES:  But as far as theft of

8    a vehicle or --

9          MR. HAJJAR:  Your Honor, I explained that when my

10   defendant gets his PSI, and before sentencing, he will have

11   time to dispute and object to --

12          THE COURT:  Okay.

13          DEFENDANT GUERRERO-MORALES:  Oh, well, that's okay

14          THE COURT:  Very well.  Then, please stand by for

15   just a moment.

16          Please arraign Mr. Najera-Macias, please.

17          MR. ESQUIVEL:  Yes, Your Honor.  *United States of*

18   *America versus Oscar Manuel Najera-Macias*, Criminal No. B-02

19   177.  Indictment:  The Grand Jury charges on or about March

20   the 3rd, 2002, in the Southern District of Texas and within

21   the jurisdiction of the Court, Defendant Oscar Manuel Najera

22   Macias, an alien, a citizen of Mexico, who was deported, and

23   knowingly and unlawfully was present in the United States,

24   having been found in Cameron County, Texas.

25          The said defendant had not obtained the conse

1  of the Attorney General of the United States for reapplicati⟨

2  by the defendant for admission into the United States.

3                In violation of Title 8, United States Code,

4  Section 1326(a), signed a True Bill by the Foreperson of the

5  Grand Jury.

6                Mr. Najera-Macias, did you understand the

7  indictment as read to you, sir?

8           DEFENDANT NAJERA-MACIAS:  Yes.

9           MR. ESQUIVEL:  And how do you plead, guilty or not

10  guilty?

11           DEFENDANT NAJERA-MACIAS:  Guilty.

12           THE COURT:  Mr. Najera, are you pleading guilty

13  because you are guilty?

14           DEFENDANT NAJERA-MACIAS:  Yes.

15           THE COURT:  Did anybody force you or threaten you ⟨

16  promise you anything to get you to plead guilty?

17           DEFENDANT NAJERA-MACIAS:  No.

18           THE COURT:  All right.  Listen very carefully.  Wh⟨

19  are the facts in this case.

20           MR. ESQUIVEL:  Your Honor, the facts will show tha⟨

21  on March the 3rd, 2002, the defendant, a citizen of Mexico w⟨

22  found in Cameron County, Texas by border patrol agents.  The

23  defendant admitted he was a citizen of Mexico and was here

24  illegally.

25                Records checks revealed that the defendant

1    deported on July 21st, 1992 from Brownsville, Texas.  The

2    defendant had not obtained the consent of the Attorney Genera

3    of the United States to apply for readmission into the Unitec

4    States.

5           THE COURT:  Okay.  Mr. Najera, you've heard what tl

6    Government has said.  Is it true, sir, that you were deportec

7    from the United States in July of 1992?

8           DEFENDANT NAJERA-MACIAS:  Yes.

9           THE COURT:  And when they found you here in March

10   the 3rd of 2002, how did you enter the United States?

11          DEFENDANT NAJERA-MACIAS:  River, through the river.

12          THE COURT:  You entered illegally?

13          DEFENDANT NAJERA-MACIAS:  Yes.

14          THE COURT:  Did you have the consent of the Attorne

15   General to return to this country?

16          DEFENDANT NAJERA-MACIAS:  No.

17          THE COURT:  Are those the facts, Mr. Hajjar?

18          MR. HAJJAR:  Yes, sir.

19          THE COURT:  All right.  Please stand by.

20               Please arraign Miguel Supinio-Carrillo.

21          MR. ESQUIVEL:  *The United States of America versus*

22   *Miguel Supinio-Carrillo, also known as Juan Carrillo, also*

23   *known Pedro Cujuy-Elias*, Criminal No. B-02-542.  Indictment:

24   The Grand Jury charges on or about September 6th, 2002, in tl

25   Southern District of Texas, and within the jurisdiction of tl

1  Court, Defendant Miguel Supinio-Carrillo, also known as Juan

2  Carrillo, also know Pedro Cujuy-Elias, an alien, who had

3  previously been denied admission, excluded, deported, after

4  having convicted of an aggravated felony, knowingly and

5  unlawfully was present in the United States, having been foun

6  in Cameron County, Texas.  Said defendant having not obtained

7  the consent of the Attorney General of the United States for

8  reapplication for admission into the United States.

9          In violation of Title 8, United States Code,

10  Section 1326(a) and 1326(b).  Signed a True Bill, Foreman of

11  the Grand Jury.

12          Mr. Miguel Supinio Carrillo, did you understan

13  the indictment as read to you?

14          DEFENDANT SUPINIO-CARRILLO:  Yes.

15          MR. ESQUIVEL:  How do you plead, guilty or not

16  guilty?

17          DEFENDANT SUPINIO-CARRILLO:  Yes, guilty.

18          THE COURT:  Are you pleading guilty because you are

19  guilty?

20          DEFENDANT SUPINIO-CARRILLO:  Yes, I am guilty.

21          THE COURT:  Did anybody force you or threaten you o

22  promise you anything to get you to give up your rights and

23  plead guilty here today?

24          DEFENDANT SUPINIO-CARRILLO:  No, no one.

25          THE COURT:  All right.  Listen very carefully.  Wha

1   are the facts in this case?

2         MR. ESQUIVEL:  The facts will show that on September

3   6th, 2002, border police encountered the defendant in

4   Brownsville, Cameron County, Texas.  On questioning, the

5   defendant stated he was a citizen and national of Mexico,

6   illegally present in the United States.

7              Records checks revealed the defendant had been

8   deported from the United States in September 2002, after

9   having been convicted of the aggravated felony of possession,

10  sale and distribution of cocaine.

11             The defendant had not applied with the Attorney

12  General of the United States for reentry.

13        THE COURT:  All right.  Mr. Supinio, is it true,

14  sir, that you were convicted for the possession of cocaine in

15  June of 1996?

16        DEFENDANT SUPINIO-CARRILLO:  Yes.  No, no, no.  It

17  was in November of '96.  November the 13th of '96.

18        THE COURT:  And did you serve time in prison for

19  that?

20        DEFENDANT SUPINIO-CARRILLO:  Yes, six years.

21        THE COURT:  So, when you were released, were you

22  deported to Mexico?

23        DEFENDANT SUPINIO-CARRILLO:  Yes, I was deported.

24        THE COURT:  Now, on November -- excuse me, on

25  September 6th of 2002, they say they found you in Brownsville

1    How did you enter the United States?

2              DEFENDANT SUPINIO-CARRILLO:  Through the river.

3              THE COURT:  You entered this country illegally?

4              DEFENDANT SUPINIO-CARRILLO:  Yes.  I didn't have an

5    documentation.

6              THE COURT:  All right.  Did you have the consent of

7    the Attorney General of the United States to return to this

8    country?

9              DEFENDANT SUPINIO-CARRILLO:  No.

10             THE COURT:  Are those the facts, Mr. Hajjar?

11             MR. HAJJAR:  Yes, sir.

12             THE COURT:  All right.  It is the finding of this

13   Court in Cause No. B-02-558, Guillermo Guerrero-Morales; B-0:

14   177, Oscar Manuel Najera-Macias, and B-02-542, Miguel Supinio

15   Carrillo, that each one of you is fully competent and capable

16   of entering an informed plea, that each one of you understand

17   the nature of the charges and the consequences of your plea,

18   and that your pleas of guilty are a knowing and voluntary

19   plea, supported an independent basis in fact containing each

20   of the essential elements of the offense.

21             I will prepare a report and recommendation in

22   each one of your cases and recommend to the district judge

23   that each one of you be found guilty and sentenced

24   accordingly.

25             Mr. Hajjar and Mr. Esquivel, have I complied

1   with the requirements of Rule 11, and are there any questions

2   either one of you would like me to ask?

3           MR. ESQUIVEL:  On behalf of the Government, you hav

4   complied, Your Honor, and we have no questions.

5           THE COURT:  All right.

6           MR. HAJJAR:  On behalf of the defendants, I believe

7   you have, Your Honor, and I have no questions.

8           THE COURT:  All right.  I'm going to order the

9   preparation of a presentence report to be completed by the 5t

10  day of December of 2002.  A copy of that report will be made

11  immediately available to defense counsel and counsel for the

12  Government.  Objections to the report are due on the 19th day

13  of December of 2002.  And a final report will be submitted to

14  the Court by the 2nd day of January of 2003.  And this case :

15  set for sentencing, each one of your cases is set for

16  sentencing for the 21st day of January of 2003 at nine o'clo

17  in the morning before Judge Tagle.

18           I will advise each one of you that you have a

19  right to have your attorney present with you when you are

20  questioned by the Probation Officer.  Be sure to discuss that

21  matter with your attorney.

22           And I'm going to make a copy of this order

23  available to all counsel at this time.

24           MR. HAJJAR:  Your Honor, there is just one matter,

25  if I could present to the Court.  Mr. Oscar Najera has not

1  been receiving his medicine.  He was placed on his medicine

2  when he came back.  I did discuss with him.  I have no

3  question that he understands the nature and consequences of

4  what he's pleading guilty to.  But I have some concerns that

5  by the time of sentencing, if he has not started getting his

6  medicine earlier, he will be less coherent if he has not

7  received his medicine.

8          THE COURT:  All right.  Ms. Bottomly?

9          MS. BOTTOMLY:  I'll look into it, Judge.

10          THE COURT:  You know what I expect, I guess?

11          MS. BOTTOMLY:  Yes.  They need to request in writi

12  at the channels.

13          THE COURT:  Well, I think under the circumstances,

14  he's going to -- may need some assistance with that, Ms.

15  Bottomly.

16          MS. BOTTOMLY:  I'll take care of it, Judge.

17          THE COURT:  All right.  Thank you.

18          MR. HAJJAR:  Thank you, Your Honor.

19          THE COURT:  All right.  I believe that cares of al

20  these matters.  So, the court will be in recess.

21          **(These proceedings adjourned at 2:45 p.m.)**

22

23                    *  *  *  *  *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct
transcript from the electronic sound
recording of the proceedings in
the above-entitled matter.

_Jean Thomas_
Signature of Transcriber

_March 26, 2003_
Date

_21550_
JTT#

```
 1              IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF TEXAS
 2                   BROWNSVILLE DIVISION
```

United States District (
Southern District of T
FILED

FEB 2 6 200

Michael N. Milb
Clerk of Court

```
 3    _____
                                    )
 4    UNITED STATES OF AMERICA      )
                                    )  CRIMINAL ACTION NO.
 5    VS.                           )  B-02-542
                                    )
 6    MIGUEL CARRILLO SUPINIO       )
      _____)
 7

 8

 9                    SENTENCING PROCEEDINGS
            BEFORE THE HONORABLE HILDA G. TAGLE
10                      JANUARY 21, 2003

11    APPEARANCES:

12    For the Government:        MS. LYNN KIRKPATRICK
                                 Assistant United States Attorney
13                               Brownsville, Texas

14    For the Defendant:         MR. PAUL HAJJAR
                                 Assistant Federal Public Defender
15                               Brownsville, Texas

16    Transcribed by:            BRECK C. RECORD
                                 Official Court Reporter
17                               600 E. Harrison, Box 16
                                 Brownsville, Texas  78520
18                               (956)548-2510

19

20

21

22

23

24

25
```

GOVERNMENT
EXHIBIT
B
Civil# B-04-56

1        THE COURT:  02-CR-542-01, The United States of America

2   versus Miguel Carrillo-Supinio.  What says the Government?

3        AUSA KIRKPATRICK:  Lynn Kirkpatrick for the Government,

4   Your Honor.  We're present and ready.

5        THE COURT:  What says the Defendant?

6        AFPD HAJJAR:  Paul Hajjar for the Defendant.  We're

7   present and ready.  There are no objections.

8     (At this time other cases were heard at which time the

9     following occurred, to wit:)

10        THE COURT:  Miguel Carrillo-Supinio.

11        AUSA KIRKPATRICK:  Lynn Kirkpatrick for the Government,

12   Your Honor.  We are present and ready.

13        AFPD HAJJAR:  Paul Hajjar for the Defendant.  We're

14   ready.

15        THE COURT:  First, is there an objection to the report

16   and recommendation of the Magistrate judge?

17        AUSA KIRKPATRICK:  None from the Government, Your Honor

18        AFPD HAJJAR:  None from the Defendant, Your Honor.

19        THE COURT:  Then the report is approved and adopted by

20   The Court and the Defendant's plea of guilty is accepted and

21   based upon the evidence in the record at re-arraignment, The

22   Court finds that the Defendant, Miguel Supinio-Carrillo, also

23   known as Juan Carillo, also known as Pedro Cujuy Elias is guilt

24   of the offense of being an alien unlawfully found in the Unitec

25   States after deportation following an aggravated felony

1    conviction as alleged in this indictment.  The Court having

2    found the Defendant guilty will now proceed with sentencing.

3        Mr. Hajjar, have you reviewed the presentence report with

4    your client?

5            AFPD HAJJAR:  Yes, Your Honor, I have.

6            THE COURT:  There being no plea agreement, I'll ask the

7    Government to address The Court.

8            AUSA KIRKPATRICK:  Your Honor, we have no opposition to

9    a low end of the guideline range.

10           THE COURT:  Mr. Hajjar?

11           AFPD HAJJAR:  Your Honor, as the report would show, my

12   client has two convictions of trafficking.  I would like The

13   Court to take into consideration that there were small amounts.

14   My client not to -- you know, reduce culpability, I'm asking The

15   Court to sentence him to the low end as recommended by the

16   probation office.  I would like The Court also take into

17   consideration the fact -- and I don't know what could be done in

18   the future about it -- my client has lived five or six years

19   part of it in prison in Georgia.  And when he was released, he

20   was put at the bridge.  He's from Chiapa, which is like, I

21   guess, a 40 hours bus ride over to the south.  The same day he

22   came back.  He has nowhere to go.  He has no attachment.  He has

23   nowhere.  And I was wondering if in the future -- I mean, I

24   imagine if he was down in Chiapa, the chances of coming back --

25   what he wanted to get back here enough to do enough work so he

4

1   can go home.  But anyway that's what the situation is at this

2   time.  And I don't know what could be remediated in the future

3   if possible.  But at this time, we ask The Court to recommend

4   the low end -- to go with the low end.

5          THE COURT:  Sir, is there anything you want to say?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Go ahead.

8          THE DEFENDANT:  When I was deported on September 4th, I

9   was deported through the city of Reynosa.  When I got to

10  Reynosa, I was not even given a dollar.  And then since where I

11  live in Chiapa is 34 or 40 hours away, I didn't even have a

12  dollar for the ticket.  And that's why I returned to this

13  country.  And I had just finished serving six years in prison.

14  I had some schooling in prison and I got my certificate.  It's

15  been about seven years that I haven't seen my family and we are

16  poor and I was addicted to drugs.  But now everything is

17  different and at first God, I am in a church, and I ask Your

18  Honor a thousand forgiveness and I know I'm guilty of being in

19  this country illegally.  And I am guilty of entering this

20  country.  That's all.

21         THE COURT:  All right, sir.  Pursuant to the Sentencing

22  Reform Act of 1984, The Court hereby sentences you to a term of

23  imprisonment of 46 months.  I'm sorry, not 46.  This is 57.  Th

24  low end here is 57?

25         PROBATION OFFICER:  That is correct, Your Honor.

Captured and Transcribed by Computer - Eclipse

1          THE COURT:  All right.  The Court hereby sentences you

2     to a term of imprisonment of 57 months.  I stand corrected.  An

3     upon release from imprisonment, you are subject to a term of

4     supervised release of three years.  During this term of

5     supervised release, even if you are deported, you have to

6     understand that should you commit any violation of the law

7     during this three-year period after your release from prison,

8     that you may be brought back into court in connection with this

9     case and be ordered to serve more time in prison, do you

10    understand that?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  And if you are found guilty, a sentence to

13    term of imprisonment for a new offense during this three-year

14    period, the sentence that you get in that case may be ordered t

15    be served consecutively to any sentence that you would get in

16    this case, do you understand that?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  And that in the future that a conviction fo

19    this kind of crime, that is, being here illegally after being

20    deported may very well subject you to a longer term of

21    imprisonment than the 57 to 71 months that you are facing today

22    do you understand that?

23         THE DEFENDANT:  Yes ma'am.

24         THE COURT:  All right then.  The conditions shall also

25    include that you are not to possess a firearm or other

1    destructive device and that you are not to illegally possess a

2    controlled substance and shall refrain from any unlawful use of

3    a controlled substance.  And again you are not to re-enter the

4    United States illegally.

5        The Court finds that you do not have an ability to pay a

6    fine and therefore waives the imposition of a fine.  However,

7    The Court does impose a special assessment of $100, which The

8    Court will order remitted should the Government move to do so

9    based upon your indigency.

10        AUSA KIRKPATRICK:  So moved, Your Honor.

11        THE COURT:  Motion's granted.

12    Sir, this sentence is in conformance with the Sentencing

13    Reform Act of 1984.  As justification for this sentence, The

14    Court adopts the findings in the presentence report.

15    The law does provide that you have a right to appeal your

16    sentence and you can do so even though you are indigent, but yo

17    must give notice of that intention within 10 days.

18    Anything else?

19        AUSA KIRKPATRICK:  Nothing further, Your Honor.

20        AFPD HAJJAR:  Nothing further.

21        THE COURT:  All right.  We're in recess.

22

23

24

25

1    UNITED STATES DISTRICT COURT        *

2

SOUTHERN DISTRICT OF TEXAS           *

3

4        I, BRECK C. RECORD, Official Court Reporter, United States

5    District Court, Southern District of Texas, do hereby certify

6    that the foregoing is a correct transcript from the record of

7    proceedings in the above-entitled matter.

8        I certify that the transcript fees and format comply with

9    those prescribed by the Court and Judicial Conference of the

10    United States.

11

12    *2/25/03*

13    BRECK C. RECORD,
      Official Court Reporter
14    United States District Court
      Southern District of Texas

15

16

17

18

19

20

21

22

23

24

25

## DECLARATION

My name is Paul G. Hajjar, I am Assistant Federal Public Defender who was appointed to represent Mr. Miguel Supinio-Carrillo in B-02-CR542. Mr. Supinio was charged with a violation of 8 U.S.C. 1326 (a) and (b). Subsequent to his guilty plea and direct appeal, Mr. Supinio filed a pro se 28 U.S.C. 2255 claiming ineffective assistance of counsel.

I do not have any independent recollection of the facts in this case, however I have reviewed our office file and do not believe that a Motion to Dismiss Indictment would have benefitted Mr. Supinio. Even if the facts were as described in Mr. Supinio's Motion, the government would have moved to dismiss and supercede the indictment which would have lead to the same result.

As to my failure to request a copy of a videotape of his apprehension, assuming it existed, I did not believe then and I do not believe now that any material fact was in dispute. Mr. Supinio had not disputed the government's version of the facts and at no time had he expressed his desire to go to trial. Our file only reflects that Mr. Supinio's perception that his sentencing range was too high. I share his perception, however, I did not believe a Motion for Downward Departure had any reasonable probability of success.

Date: 8/2/04

Paul G. Hajjar
PAUL G. HAJJAR
Assistant Federal Public Defender
Southern District of Texas- Brownsville Division

GOVERNMENT EXHIBIT
C
Civil# B-04-56

## CERTIFICATE OF SERVICE

I, David H. Peck, Assistant United States Attorney, certify that a copy of this answer to Petitioner Miguel Supinio Carrillo's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255 and supporting brief has been served by placing it in the United States mail, postage prepaid, on August 4, 2004, addressed to:

Miguel Supinio Carrillo, <u>pro se</u>
Registration No. 18123-179
Reeves County Detention Center
P.O. Box 1560
Pecos, Texas 79772-1560

David H. Peck
Assistant United States Attorney